53 CCPA
**Application of Ralph M. DURHAM.**
**Patent Appeal No. 7595.**

United States Court of Customs and Patent Appeals.
March 10, 1966.

Charles W. Coffee, Lubbock, Tex., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel) for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief*

*Judge Worley,* pursuant to provisions of Section 294(d), Title 28, United States Code.

SMITH, Judge.

The only issue remaining in this appeal is whether the method or process of appealed claims 10–15, inclusive,[1] is obvious under 35 U.S.C. § 103.

The invention is described in appellant's brief as follows:

Appellant's invention is for artificially marbling meat.

One of the factors in the quality and grading of beef is the amount of intramuscular fat found in the beef as "marbling". The term marbling is a common term used in the trade and understood by those in the trade as being small flecks or particles of fat within the muscle of the meat.

The desirability of marbling is recognized. Also the desirability of adding fat to lean meat has long been recognized. * * *

Appellant adds the extra fat into the meat by inserting a hollow needle into the meat and injecting fat by a pump under pressure in the order of 25 psi. The fat must be in a liquid state and therefore at a temperature sufficient to keep it melted. Furthermore, the fat must not be so hot as to cook the meat when it is injected. Generally a temperature range of 100° to 140°F is desirable.

The product produced by such artificial marbling of the meat is one which closely resembles natural marbling. The amount of fat injected into the meat may be closely regulated to the desired taste of the consumer. Generally about 8 to 10% by weight is added.

The added fat will not be connected to the muscle fibers and therefore is different from natural marbling. The fat will be outside of the blood vessels or extravascular.

Claim 10 is the only appealed claim to use the term "marble" and reads as follows:

10. The method of treating meat comprising intramuscularly injecting fat into the meat, under pressure by needle inserted into the muscle, sufficient fat being injected to marble the meat.

Claim 15 is the most detailed of the appealed claims and reads as follows:

15. The method of treating meat comprising intramuscularly injecting fat by needles spaced less than one inch apart into pieces of meat, said fat is supplied to the needles under a pressure of from 20 to 40 psig. and said fat is at a temperature between 100°F. and 150°F.

Claim 11 differs from claim 10 only in the terms used to define the amount of fat to be injected. It requires that "the injected fat may be visible upon slicing the meat." Claim 12 limits the fat used in the process to that "which will solidify at normal meat storing temperature, but will liquify at normal cooking temperatures into juices in the meat." Claim 13 is specific to the treatment of beef and the use of beef tallow as the injected fat. Claim 14 relates to the treatment of meat generally by the described fat injection process and includes the use of "fat other than the fat from the animal from which the meat was taken."

According to appellant, as used in the claims the term "fat" designates vegetable oils as well as animal fats.

In a letter to the Patent Office dated October 31, 1963, appellant expressed what seems to be his present position, i. e., "if the broad principle is not patentable, that certain limitations such as

---

1. Application Ser. No. 135,887, filed Feb. 5, 1961 for "Method of Treating Meat." No claims have been allowed. Appellant originally appealed the rejection of all 17 claims but has now withdrawn the appeal as to all except claims 10–15, inclusive.

are contained in claim 15 limiting temperatures, etc. are not patentable." We shall, therefore, here consider only the patentability of the "broad principle" set forth in the appealed claims.

The rejection of the appealed claims was predicated on the finding that they did not cover an unobvious method or process in view of the following references:

| Williams et al. [Williams] | 2,805,163 | Sept. 3, 1957 |
| Bettencourt [2] | 2,473,191 | June 14, 1949 |
| Tichy | 2,418,914 | Apr. 15, 1947 |

The pertinent disclosures of Tichy and Williams may be summarized as follows: Tichy discloses a process for making meat more tender which comprises projecting animal fats in the form of a spray of finely divided particles from nozzles. The material sprayed may be in the form of a suspension of solid particles, powdered solids, emulsion or a solution. The nozzles have openings of .0001 in. diameter, and the particles are said to penetrate deeply into the interior of the meat by reason of the high pressure (from 1,000 to 7,000 psi) employed.

Williams teaches the injection of an aqueous medium (e. g., a solution of an enzyme or monosodium glutamate) into muscular tissue of meat, indirectly through the vascular system or directly by a procedure known as "stitch pumping" or both. The parties agree that "A stitch pumping process is by insertion of needles into the meat and injecting the liquid under pressure."

The board sustained the rejection of process claims 10–15 in view of the combined teachings of Tichy and Williams, stating:

> Even though Tichy injects the fat by a high velocity spray which apparently does not require insertion of the needle into the meat, we believe that it would be obvious to a person of ordinary skill to inject the fat by the simple "stitch pumping" procedure of Williams et al. Tichy's objective is the introduction of fat deep into the interior of the meat, and this end may be achieved by either a high velocity spray, as in Tichy, or by "stitch pumping," as in Williams et al. * * *

Appellant takes issue with this statement of what Tichy teaches and states in his brief:

> Tichy states as his main object: "The principle object of my invention is to rapidly create a change in meat which will result in its being more easily masticated and more tender in a short time after slaughtering of the animal.
>
> "Another object of my invention is the treatment of meat in such a way that the normal ripening process will be aided by physical and/or chemical means."

A study of the complete disclosure of Tichy has led appellant to the conclusion that if Tichy attempted to introduce enough fat to marble the meat that he would beat the surface of the meat to a pulp and would not achieve sufficient depth of penetration with large quantities of fat to achieve a "marbling" effect.

Even accepting appellant's position as sound with regard to Tichy, it does not meet the above ground of rejection as stated by the board. The issue raised by the board's rejection is whether, admitting the limitations on Tichy's disclosures as to his particular method of fat injection through a very small orifice at high pressures, it would have been

---

2. We do not find it necessary to discuss this reference.

obvious under the conditions stated in 35 U.S.C. 103 to have used an insertable needle and low pressures as taught by Williams, to inject fat into meat. On this issue we agree with the board that such a substitution would have been obvious under 35 U.S.C. 103.

In view of the dispositive nature of the foregoing, we deem it unnecessary to review the other grounds of the board's rejection of the appealed claims. The decision of the board is affirmed.

Affirmed.